IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

COURTNEY LAMONT EDMOND,
        Plaintiff,

v.                                                  Civil Action No. 3:21cv139

WELLS FARGO CLEARING SERVICES,
LLC,
        Defendant.

## OPINION

Courtney Lamont Edmond began working for Wells Fargo Clearing Services, LLC ("Wells Fargo"), in 2015. In addition to his employment with Wells Fargo, Edmond ran an import and export business, CLE International, LLC ("CLE International"). Because of his position with Wells Fargo, Edmond had to apply for and receive clearance from Wells Fargo before continuing this side business; he did so in 2015.

In 2017, Edmond started a new import and export business, CLE Deals, LLC ("CLE Deals"). Edmond did not request the necessary clearance from Wells Fargo for CLE Deals. In 2019 and 2020, several suspicious transactions involving CLE Deals's business account at Wells Fargo prompted the bank to investigate Edmond and the account. The investigation revealed that Edmond could not explain the source of the funds deposited into CLE Deals's account. Because of the risk Edmond's business dealings posed to Wells Fargo, the bank terminated Edmond's employment.

During the investigation into CLE Deals's account, Edmond raised concerns about the experience Black customers have while banking at Wells Fargo. He claimed to have experienced this discriminatory treatment himself as one of Wells Fargo's customers. Edmond, a Black man, now sues Wells Fargo, claiming that it terminated his employment not because of

his personal finances, but because of his race and the discriminatory treatment of which he accused the bank. Edmond brings claims under both Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 for various forms of discrimination, primarily based on race.

Wells Fargo and Edmond both move for summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF Nos. 40, 43.) Because each of Edmond's claims fail, the Court will grant Wells Fargo's motion and deny Edmond's motion. First, Edmond claims that Wells Fargo discriminated against him based on his national origin; this claim fails because not only did Edmond abandon the claim by not raising it in his brief in opposition to Wells Fargo's motion, but Edmond did not administratively exhaust his remedies as to this claim. Second, Edmond says that Wells Fargo discriminated against him by wrongfully terminating his employment. But because Edmond does not show that his position remained open, was filled by a similarly qualified applicant outside his protected class, or that a similarly qualified applicant was retained under similar circumstances, this claim also fails. Third, Edmond accuses Wells Fargo of treating him differently because of his race. Without any evidence to support that accusation, however, this claim of disparate treatment falters. Fourth, Edmond says that Wells Fargo did not promote him because of his race; this claim fails because Edmond offers no evidence that he applied or even attempted to apply for a promotion. Fifth, without any proof that a causal relationship exists between the alleged protected activities and his termination, Edmond's claim of discriminatory retaliation fails. Finally, to the extent Edmond argues that Wells Fargo unintentionally discriminated through a facially neutral policy, this claim also fails because he provides no evidence of a facially neutral employment practice that had a significantly discriminatory impact.

Even if Edmond could prove a prima facie case of discrimination in any of these forms, his claims would still fail because he presents no evidence that Wells Fargo's proffered reason for firing him—because Edmond violated Wells Fargo policy by improperly handling his personal finances—serves as pretext for racial discrimination.

## I. **LEGAL STANDARD**

Rule 56 of the Federal Rules of Civil Procedure directs courts to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the court must draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nevertheless, if the non-moving party fails to sufficiently establish the existence of an essential element of its claim on which it bears the ultimate burden of proof, the court should enter summary judgment against that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When reviewing cross-motions for summary judgment, "the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 354 (4th Cir. 2011).

When the plaintiff appears pro se, as Edmond does here, courts do not expect him to frame legal issues with the clarity and precision expected from lawyers. Accordingly, courts construe pro se complaints liberally. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). This principle, however, has limits. *Id.* Courts do not need to discern the unexpressed intent of the plaintiff or take on "the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Id.* "When a pro se litigant is involved, although the same standards for summary judgment apply, the pro se litigant 'should

3

be given special latitude in responding to a summary judgment motion.'" *Knowles v. N.Y.C. Dep't of Corr.*, 904 F. Supp. 217, 220 (S.D.N.Y. 1995) (quoting *Gonzalez v. Long*, 889 F. Supp. 639, 642 (E.D.N.Y. 1995)). "Thus, as courts have recognized repeatedly, even a pro se party may not avoid summary judgment by relying on bald assertions and speculative arguments." *Smith v. Vilsack*, 832 F. Supp. 2d 573, 580 (D. Md. 2011).

## II. UNDISPUTED FACTS[1]

Wells Fargo hired Edmond in January 2015 as a Securities Operations Service Specialist. (ECF No. 43-3 ¶ 4.)[2] Edmond reported to then-Operations Manager Harold Deaver until July 2019, after which time Edmond reported to Operations Manager Billie Kinder. (*Id.* ¶ 6.)

"Before 2018, Wells Fargo allowed for progression (also referred to as growth promotions) for employees who worked in Operations," like Edmond. (ECF No. 43-6 ¶ 5.) Growth promotions allowed operations managers "to promote an employee from one level to the next within the same job title without the employee having to submit an application." (*Id.*) Deaver did this twice during his tenure as Operations Manager, but not for Edmond, who

---

[1] In Wells Fargo's brief in support of its motion, it sets forth material, undisputed facts over seventy-two paragraphs. (ECF No. 43-1, at 2–17.) Despite Local Civil Rule 56(B), Edmond responded to some, but not all, of Wells Fargo's undisputed facts. (ECF No. 49, at 3–18.) And in the responses he offered, Edmond failed to directly respond and sparingly cited parts of the record to support his dispute. (*See, e.g., id.* at 3–4.)

As for Edmond's motion, he sets forth his undisputed facts over just two pages. (ECF No. 41, at 3–4.) He offers record citations to support just one of his facts. (*Id.* at 3.)

"Although pro se litigants are to be given some latitude," the standards set forth in Federal Rule 56 "apply to everyone." *Smith*, 832 F. Supp. 2d at 580. This Court, therefore, considers admitted the undisputed facts set forth by Wells Fargo that Edmond fails to oppose. *See* Fed. R. Civ. P. 56(e); Local Civ. R. 56(B) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."). Further, the Court does not credit any "unsupported factual assertions" offered by Edmond. *Smith*, 832 F. Supp. 2d at 580. Likewise, conclusory legal assertions cannot support Edmond's claims.

[2] The Court employs the pagination assigned by the CM/ECF docketing system.

4

"generally met expectations . . . but . . . did not frequently exceed expectations." (*Id.* ¶ 9.) Deaver told Edmond he hoped to request Edmond's promotion in 2018 but, sometime in 2018, "the growth promotion practice was discontinued." (*Id.* ¶¶ 10, 11.) "After this change was implemented, Operations employees who sought promotion or other opportunities within the Company would need to submit applications for posted positions . . . ." (*Id.* ¶ 11.)

Wells Fargo maintains a Conflicts of Interest and Outside Activities Policy, which manages employees' conflicts of interest. (ECF No. 43-3, at 15–16.) "Certain activities must be strictly avoided, [and] the others require written pre-clearance in the Global Pre-Clearance System . . . before they can be undertaken . . . ." (*Id.* at 16.) "Because of the nature of Wells Fargo's business, any improper handling of a team member's personal finances could undermine the credibility of the team member and Wells Fargo." (*Id.* at 18.) "Team members must handle their personal finances responsibly, with integrity, and in compliance with the law." (*Id.*) Further, Wells Fargo has "special responsibilities to help combat money laundering," including monitoring unusual and suspicious account activities. (ECF No. 43-4, at 123.)

In January 2015, pursuant to Wells Fargo's Conflicts of Interest and Outside Activities Policy, Edmond submitted an outside activity request. (ECF No. 43-5, at 17:21–18:7, 33–35.) Edmond asked for Wells Fargo's approval of CLE International, an import and export business. (*Id.* at 18:3–19:17.) Wells Fargo approved Edmond's request. (*Id.* at 37.)

In 2017, Edmond began a new import and export business, CLE Deals. (*Id.* at 21:17–22:1.) Edmond opened a business account for CLE Deals at Wells Fargo. (*Id.* at 22:2–7.) In the business account application for CLE Deals, Edmond, the sole owner of the account, reported $40,000 of annual gross sales. (*Id.* at 39.) Edmond never submitted an outside activity request for CLE Deals. (ECF No. 43-4 ¶¶ 8, 15.)

5

In January 2019, "Wells Fargo was notified that a customer in Wisconsin attempted to make a cash deposit of $4,000 into" Edmond's CLE Deals account. (ECF No. 43-7 ¶¶ 3–5.) Wells Fargo received this alert "because Wells Fargo's policy is that cash may only be deposited by the account owner." (*Id.* ¶ 6.) The customer who sought to make the deposit said that "she was doing business with the account owner" and that "the account belonged to her attorney, who was assisting [her] husband in Syria." (*Id.* ¶ 4.)

Wells Fargo's Internal Investigations and Anti-Money Laundering teams began investigating the CLE Deals account "because the activity appeared suspicious and raised concerns about the source of the funds." (*Id.* ¶ 7.) Andrew Workman, Wells Fargo's former Senior Internal Investigator, took charge of the internal investigation. (*Id.* ¶¶ 2, 7.) Edmond informed Workman that "the deposited funds were owed to him by the business partner in Ghana." (*Id.* ¶ 10.) Ultimately, Workman "concluded that CLE Deals was a legitimate business that imported and exported products, but the origin of the funds needed to be better documented." (*Id.* ¶ 11.) Edmond agreed to provide the additional documentation, and Workman closed the case, noting that his investigation confirmed a policy violation and that he would refer the matter to Employee Relations for recommended disciplinary action. (*Id.* ¶ 11, at 10.)

In March 2020, Wells Fargo's Anti-Money Laundering team "flagged . . . Edmond's business account for [CLE Deals] for suspicious activity based on unusual movements of funds in and out of Mr. Edmond's account totaling $732,262 between August 2019 and March 2020." (ECF No. 43-4 ¶ 3.) Unable "to determine a legitimate connection between Edmond" and the individuals withdrawing and depositing money from the CLE Deals account, (*id.* at 120), the Anti-Money Laundering team referred the case "to Wells Fargo's Enterprise Investigations for

further review." (*Id.* ¶ 6.) Amanda Long, a Certified Anti-Money Laundering Specialist, "was assigned to investigate the case." (*Id.*)

As part of her investigation, Long interviewed Edmond by phone on April 17, 2020. (*Id.* ¶ 10.) Dennis Capriglione, Regulatory Counsel, and Alexis Holt with Enterprise Investigations also joined the call. (*Id.*) During the April 17 call, Long informed Edmond of her investigation and asked him to explain the transactions involving the CLE Deals account. (*Id.*) Capriglione and Long found Edmond's answers non-responsive. (*Id.* ¶ 10(g); ECF No. 43-9, at 2:12–21.) Capriglione and Long, therefore, decided to schedule a second call to give Edmond another opportunity to answer their questions. (ECF No. 43-9, at 2:22–23.)

During the April 17 call, Edmond "remarked that he felt he was treated differently when he visited Wells Fargo bank branches as a customer because he is Black."[3] (ECF No. 43-4 ¶ 10(d).) Other than this comment, "Mr. Edmond did not report during the April 17 interview that he experienced discrimination or unfavorable treatment based on race or any other protected category." (*Id.* ¶ 10(h).)

On April 24, 2020, Long and Capriglione interviewed Edmond again by phone. (*Id.* at 21–25.) Ruth Vitale, also with Enterprise Investigations, joined the interview. (*Id.*) Again, Long and Capriglione asked Edmond about his relationship with the individuals depositing money in the CLE Deals account. (*Id.*) Edmond admitted that he did not know where one of his business partners got the $75,000 she deposited in his account. (*Id.* at 25.) He also admitted that he had never met another of his business partners in person. (*Id.* ¶ 13.) Finally, Edmond

---

[3] The parties also refer to this comment as one in which Edmond alleges that Wells Fargo treats differently those who "bank[] while Black." (*See, e.g.*, ECF No. 43-1, at 28.)

7

informed Long and Capriglione that he would have his tax returns for their review in four weeks. (*Id.* ¶ 11(f).)[4]

By May 4, 2020, Long had concluded her investigation and shared her findings with Esther Moliki, an Employee Relations Consultant. (ECF No. 43-4, at 27–29; ECF No. 43-3 ¶ 2.) Long

> concluded that Mr. Edmond violated Wells Fargo's Code of Ethics and Personal Finances policies . . . . because he could not explain the source of the funds he received from [one business partner] or the nature of her business, he had never met [another business partner] in person, he was not able to clearly describe several transactions, and he did not produce any invoices or contracts related to the transactions.

(ECF No. 43-4 ¶ 13.) Long "did not believe that Mr. Edmond's tax returns would have affected [her] findings because there was already substantial evidence that he did not know the source of the funds for transactions in his account, and the tax returns would not include that information." (*Id.* ¶ 17.)

Moliki "was assigned to review the findings of Amanda Long relating to her investigation of Mr. Edmond and to recommend to his managers what corrective action, if any, should be taken." (ECF No. 43-3 ¶ 7.) Moliki "concluded that Mr. Edmond had violated Wells Fargo policy because he did not know the source of funds for his transactions in his Wells Fargo account." (*Id.* ¶ 8.) At the time, Moliki did not know Edmond's race. (ECF No. 43-12, at 13:8–14.) Moliki also did not believe Edmond's tax returns would change her conclusion based on the

---

[4] Capriglione's willingness to accept and review Edmond's tax returns is immaterial to Edmond's case. (ECF No. 41-1, at 6–7.) Capriglione did not decide whether to terminate Edmond's employment; only Kinder had that authority. (ECF No. 44, at 8.) As explained below, Kinder made the decision to fire Edmond based on Long's investigation and Esther Moliki's recommendation, and neither Long nor Moliki believed the tax returns would affect either the investigation or recommendation. Edmond offers no evidence that allows the Court to find the contrary true.

substantial evidence and because the "tax returns would not include" information about the source of funds. (ECF No. 43-3 ¶ 9.)

On May 13, 2020, Moliki, Kinder, Long, Capriglione, and Operations Manager Supranee Krausz reviewed Long's findings on a conference call. (*Id.* ¶ 10.) The group did not discuss potential disciplinary actions on this call. (*Id.*)

Later on May 13, 2020, Kinder, Krausz, and Moliki "held a second call to discuss what disciplinary action should be taken against Mr. Edmond." (*Id.* ¶ 11.) Moliki recommended terminating Edmond's employment "based on his violation of Wells Fargo policy regarding improper handling of personal finances." (*Id.*) Specifically, Moliki made this recommendation "because Mr. Edmond did not know the source of funds in his account, and he conducted business transactions which individuals with whom he had never met in person or whose business activities were unknown to him." (*Id.*) After the call, Moliki emailed Kinder to confirm her recommendation. (*Id.* at 40–42.) Kinder agreed with Moliki's recommendation "and decided during the second call on May 13, 2020 to terminate Mr. Edmond's employment." (ECF No. 43-14 ¶ 6.) "At the time of the May 13 calls, [Kinder] was not aware of any concerns from Mr. Edmond that he felt he was treated differently based on his race when he visited a bank branch as a customer or of any complaints by Mr. Edmond regarding alleged discrimination based on race or any other protected category." (*Id.* ¶ 7.)

On May 15, 2020, Kinder informed Edmond "that Wells Fargo was terminating his employment." (*Id.* ¶ 8.)

Also on May 15, 2020, Edmond submitted an internal ethics complaint to Wells Fargo. (ECF No. 43-5, at 42–43.) His complaint challenged the investigation of the CLE Deals bank account; he wondered how he "went from being cleared [after Workman's investigation] to

9

having an 'ethics violation' without any notification or explanation as to what [he] did in error?" (*Id.* at 42.) Further, Edmond asserted that Capriglione "must have realized there [was] no way to prevent" people complaining "of banking while black at Wells Fargo" and "realized [it is] best for the company to part ways with [Edmond] before it was beyond clear [he] was being targeted for banking while black." (*Id.*)

Staci Richards, an Enterprise Investigations Senior Employment Investigator for Wells Fargo, investigated Edmond's ethics complaint. (ECF No. 43-15 ¶¶ 2, 3.) Richards interviewed twenty-six people over one month and found no violation of Wells Fargo's policies prohibiting retaliation, harassment, and discrimination. (*Id.* ¶ 4; 5–28.)

On June 1, 2020, Edmond filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Wells Fargo. In his charge, Edmond claimed that Wells Fargo discriminated against him based on his sex and race and that he "was passed over for two promotions" while "[a] position was created to accommodate a Caucasian employee." (ECF No. 43-5, at 32.) The EEOC issued Edmond a right to sue letter. (ECF No. 49, at 17.)

At some point in 2020, Edmond reported wrongdoing by Wells Fargo to the Financial Industry Regulatory Authority ("FINRA"). (*See* ECF No. 49-1, at 44–45.)

### III. DISCUSSION

The parties' dueling summary judgment motions present the same issues; each side argues that the undisputed facts entitle them to summary judgment as a matter of law. Thus, for clarity, the Court will consider each of Edmond's claims in turn—his Title VII and § 1981 claims of discrimination based on national origin, and discrimination based on race in the form of wrongful termination, disparate treatment, failure to promote, retaliation, and his Title VII disparate impact claim. The Court will consider whether it will grant or deny Edmond's or

10

Wells Fargo's motion as to each claim.

### *A. Discrimination Based on National Origin*

"Before a Title VII plaintiff can bring a formal suit, he must file an administrative charge with the [EEOC]." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005). The EEOC charge "frames the scope of future litigation," *id.*, such that "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Id.* (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)). Any claims that fall outside these bounds fail as "procedurally barred." *Id.* at 509 (quoting *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995)).

Edmond's EEOC charge alleges retaliation and discrimination based on race and sex. Edmond's charge does not mention discrimination based on national origin. Even construing the charge liberally, as the Court must, a discrimination claim based on national origin does not relate to the original complaint nor would a reasonable investigation develop such a claim. Edmond's national original claim, therefore, fails as procedurally barred; to the extent Edmond brings the claim under Title VII, the Court will grant Wells Fargo's motion and deny Edmond's motion as to the latter's national origin claim.

Even if Edmond had exhausted his administrative remedies as to the national origin claim, the claim would still falter because Edmond abandoned the claim by not responding to the arguments Wells Fargo made regarding the claim in its motion for summary judgment. *See United Supreme Council v. United Supreme Council of Ancient Accepted Scottish Rite for 33 Degree of Freemasonry*, 329 F. Supp. 3d 283, 292 (E.D. Va. 2018) ("Failure to respond to an argument made in a dispositive pleading results in a concession of that claim."). For this reason,

Edmond's national origin claim also fails to the extent he brings the claim under § 1981, which does not require administrative exhaustion. *McKenzie-El v. Am. Sugar Refining, Inc.*, No. 21-1089, 2021 WL 5412341, at *2 n.2 (4th Cir. Nov. 19, 2021) ("Title VII's exhaustion requirements don't apply to § 1981 claims . . . ."). The Court will, therefore, grant summary judgment in favor of Wells Fargo and against Edmond as to any § 1981 national origin claim.

### *B. Discrimination Based on Race*

Edmond does not provide direct evidence of discriminatory conduct.[5] Accordingly, he must proceed under the *McDonnell Douglas* burden-shifting test. *Sadeghi v. Inova Health Sys.*, 251 F. Supp. 3d 978, 991 (E.D. Va. 2017) (applying this test to claims brought under Title VII); *Gary v. Facebook, Inc.*, 822 F. App'x 175, 179 (4th Cir. 2020) ("Where . . . the § 1981 plaintiff doesn't allege direct evidence of discrimination, we apply the burden-shifting framework of *McDonnell Douglas* . . . ."). Under the *McDonnell Douglas* test, Edmond must first establish a prima facie case of discrimination; the prima facie case that Edmond must prove varies depending on the type of discrimination he alleges.

---

[5] Edmond claims to have "shown direct evidence" of discrimination "through the allegations he made in the EEOC charge and the lawsuit," and "through is [sic] affidavit in support of his motion for summary judgment." (ECF No. 41, at 13.) "Direct evidence of discrimination is either direct evidence of a stated purpose to discriminate, or circumstantial evidence of sufficient probative force to raise a genuine issue of material fact . . . [t]he plaintiff's 'own naked opinion, without more,' is not enough to establish a genuine issue of fact." *James v. City of Chesapeake*, 424 F. Supp. 2d 852, 856 (E.D. Va. 2005) (omission and alteration in original) (quoting *Demuren v. Old Dominion Univ.*, 33 F. Supp. 2d 469, 479 (E.D. Va. 1999)). "Direct evidence must be 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (quoting *Taylor v. Va. Union. Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (en banc)).
Because Edmond's opinion alone supports his allegations in the EEOC charge and in this lawsuit, these allegations do not amount to direct evidence. As for Edmond's affidavit, (ECF No. 50), the "facts" he swears to therein that bear directly on his termination from Wells Fargo are conclusory statements that do not amount to admissible evidence. *Evans*, 80 F.3d at 962 ("[S]ummary judgment affidavits cannot be conclusory or based upon hearsay." (cleaned up)).

### *1. Wrongful Termination*

To establish a prima facie case of wrongful termination under Title VII,[6] Edmond must show that: (1) he "is a member of a protected class;" (2) he "suffered an adverse employment action;" (3) "at the time the employer took the adverse employment action [he] was performing at a level that met [his] employer's legitimate expectations;" and (4) "the position remained open or was filled by a similarly qualified applicant outside the protected class." *Scott v. Health Net Fed. Servs., LLC*, 807 F. Supp. 2d 527, 533–34 (E.D. Va. 2011).

Edmond has not identified who replaced him in his position, nor has he presented any evidence that the position remained open. Further, Edmond offers no evidence that Wells Fargo retained other employees who faced similar questions about their personal finances. Thus, he fails to establish a prima facie case of wrongful termination under either Title VII or § 1981, and his claim falters. The Court will, therefore, grant Wells Fargo's motion and deny Edmond's as to the wrongful termination claim.

### *2. Disparate Treatment*

"The first three elements of a prima facie case for disparate treatment parallel those in wrongful termination cases, but diverge as to the fourth element, which, in a disparate treatment case, requires plaintiff to put forward evidence that '[he] was treated differently than similarly

---

[6] The elements of a wrongful termination claim brought under § 1981 nearly mirror those of a wrongful termination claim brought under Title VII. To establish a prima facie of wrongful termination in violation of § 1981, the plaintiff "must show that: (1) he is a member of a protected class; (2) he was qualified for his job and his job performance was satisfactory; (3) he was fired; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances." *Honor v. Booz-Allen & Hamilton*, 383 F.3d 180, 188 (4th Cir. 2004).

situated employees outside the protected class.'"[7] *Scott*, 807 F. Supp. 2d at 534 (quoting *Brockman v. Snow*, 217 F. App'x 201, 206 (4th Cir. 2007)).

Edmond alleges that Wells Fargo treated him differently than it treated similarly situated employees outside his protected class. (ECF No. 49, at 20–27.) In support of his allegations, however, Edmond offers nothing more than conclusory allegations, (*id.* at 21–22), interview answers from other Wells Fargo employees during the investigation into Edmond's ethics complaint, (ECF No. 49-1, at 59–63), and four news articles about discrimination at Wells Fargo, (*id.* at 46–58). *See Sentry Select Ins. Co. v. Thompson*, 665 F. Supp. 2d 561, 565 (E.D. Va. 2009) ("To defeat a properly supported motion for summary judgment, the non-moving party 'must set forth specific facts showing that there is a genuine issue for trial.'" (quoting *Anderson*, 477 U.S. at 247–48)). None of the interview answers or newspaper articles suggest that Wells Fargo treated Edmond differently than other employees based on his race. Thus, Edmond has not established the fourth element of a disparate treatment claim under either Title VII and § 1981, which entitles Wells Fargo to summary judgment. The Court will, therefore, deny Edmond's motion and grant Wells Fargo's as to the disparate treatment claim.

### 3. *Failure to Promote*

"In order to establish a prima facie case of racial discrimination in promotions under § 1981 or Title VII," Edmond must establish that "(1) [he] is a member of a protected group, (2) [he] applied for the position in question, (3) [he] was qualified for that position, and (4) [his employer] rejected [his] application under circumstances that give rise to an inference of discrimination." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir.

---

[7] "[T]he elements required to establish a prima facie case of disparate treatment are the same under Title VII and § 1981." *Martin v. Merck & Co.*, 446 F. Supp. 2d 615, 631 (W.D. Va. 2006).

2005).

Edmond offers no evidence that he applied—or even attempted to apply—for a promotion.[8] *See Evans*, 80 F.3d at 959 (explaining that a plaintiff must have applied or "sought to apply" for position to make out claim under Title VII). Although courts may relax this application requirement "if the employer fails to make its employees aware of vacancies," *William v. Giant Food Inc.*, 370 F.3d 423, 431 (4th Cir. 2004), Wells Fargo has published "[i]nternal job opportunities . . . on [its] online Jobs Search page" since 2018, (ECF Nos. 43-3, at 38; 43-6 ¶ 5). The application requirement, therefore, operates in full force for Edmond's Title VII failure-to-promote claim. Thus, Edmond's failure to apply or even attempt to apply for an open position "is enough to defeat [his Title VII failure-to-promote] claim[] as a matter of law." *Harrison v. S.C. Dep't of Mental Health*, 641 F. App'x 202, 207 (4th Cir. 2015).

Edmond's failure-to-promote claim fails for another reason; he offers *no* evidence that Wells Fargo stood in the way of his advancement in any way, not to mention in a way that gives rise to an inference of discrimination. Although Deaver requested growth promotions for two of his subordinates, his decision *not* to request one for Edmond does not create any inference of

---

[8] Because Edmond filed his EEOC charge on June 1, 2020, Title VII's statute of limitations bars any challenge of employment decisions made before August 6, 2019. *See Mezu v. Morgan State Univ.*, 367 F. App'x 385, 388 (4th Cir. 2010) ("The Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(e)(1), provides that a Title VII charge must be filed with the EEOC . . . within 300 days if the claimant has instituted proceedings with a state or local agency.").

Further, because a four-year statute of limitations applies to claims of racial discrimination in promotion brought under § 1981, Edmond cannot challenge any decisions regarding promotion made before March 2017. *See James v. Circuit City Stores*, 370 F.3d 417, 421 (4th Cir. 2004) (explaining that causes of action—like failure to promote—that arise under "the amendment to § 1981 contained in the 1991 Act" are "governed by § 1658's" four-year statute of limitations); *see also Weathersbee v. Balt. City Fire Dep't*, 970 F. Supp. 2d 418, 429 (D. Md. 2013) ("Because plaintiff's § 1981 claim does not concern discrimination in the formation of his employment contract, but rather alleged post-formation discrimination, the applicable statute of limitations is four years, pursuant to 28 U.S.C. § 1658.").

discrimination. Indeed, Deaver hoped to request Edmond's promotion in 2018, but the discontinuance of the growth promotion process thwarted his plan.

Because Edmond does not establish a prima facie case of racial discrimination in promotion under either Title VII or § 1981, the Court will grant Wells Fargo's motion and deny Edmond's motion as to that claim.

### 4. *Retaliation*

"A plaintiff can prove illegal retaliation under Title VII or § 1981 if he shows that '(1) he engaged in protected activity, (2) he suffered an adverse employment action at the hands of [his employer]; and (3) [the employer] took the adverse action because of the protected activity.'" *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543 (4th Cir. 2003) (alterations in original) (quoting *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 190 (4th Cir. 2001)).

Edmond points to two possible protected activities: the comments he made about discrimination on the April 2020 calls and his FINRA complaint. Edmond fails to "demonstrate a causal relationship between [either of the alleged] protected activit[ies] and his employer's adverse action"—terminating Edmond's employment.[9] *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021). A plaintiff may establish this causal connection in two ways: (1) by offering "facts that 'suggest[] that the adverse action occurred because of the protected activity,'" *id.* at 123 (alteration in original) (quoting *Johnson v. United Parcel Serv., Inc.*, 839 F.

---

[9] To the extent Edmond argues that Wells Fargo providing a negative reference to a prospective employer amounts to the adverse employment action, this argument also fails. "[A] poor performance evaluation 'is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment.'" *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004) (quoting *Spears v. Mo. Dep't of Corr. & Hum. Res.*, 210 F.3d 850, 854 (8th Cir. 2000)). First, Edmond offers no evidence of the negative performance evaluation. He also does not allege— nor does he offer any evidence—that Wells Fargo adjusted the terms or conditions of his employment based on the negative reference; indeed, Wells Fargo had seemingly already terminated Edmond's employment when it allegedly provided the negative reference.

App'x 781, 784 (4th Cir. 2021)), or (2) by "establish[ing] that 'the adverse act bears sufficient temporal proximity to the protected activity,'" *id.* (quoting *Johnson*, 839 F. App'x at 784). Further, "a plaintiff must show that the decisionmaker was aware of the protected activity at the time the alleged retaliation occurred." *Id.*

Neither Moliki, who recommended terminating Edmond's employment, nor Kinder, who actually fired Edmond, knew about Edmond's complaints about discrimination when they made their respective decisions to recommend termination and actually fire Edmond. Thus, despite the temporal proximity between the comments Edmond made on the April 2020 calls and his termination, he fails to establish a causal connection between them. Likewise, Edmond offers no evidence that Long, Kinder, or Moliki knew about his FINRA complaint. As a result, Edmond's prima facie claim falters on the causal requirement.[10]

Because Edmond fails to establish that Wells Fargo decided to terminate his employment because of his alleged protected activities, the Court will grant Wells Fargo's motion and deny

---

[10] Even if Edmond could satisfy the causal requirement, his retaliation claim would still fail to the extent he bases it on the comments that he made during his April 2020 interviews because Title VII does not protect these comments. "'Protected activity' under Title VII is narrowly defined: Title VII makes it unlawful to retaliate against an employee because the employee 'opposed any [discriminatory practice under Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'" *Supinger v. Virginia*, 167 F. Supp. 3d 795, 811 (W.D. Va. 2016) (quoting 42 U.S.C. § 2000e–3). "The Fourth Circuit has made it clear that Title VII's antiretaliation provision is 'not a general bad acts statute,' and thus, only activities that oppose employment-related discrimination are protected from retaliation." *Abadi v. Mecklenberg Cnty. Gov't*, No. 3:17cv435, 2019 WL 2546732, at *2 (W.D.N.C. June 20, 2019) (quoting *Crowley v. Prince George's County, Md.*, 890 F.2d 683, 687 (4th Cir. 1989)) ("Title VII . . . does not protect against retaliation for more general 'whistleblowing' activities.").

Neither of the comments that Edmond made during his April 2020 interviews about Wells Fargo's alleged discriminatory practices—that he believed Wells Fargo treated him differently as a customer due to his race and that many people complain about banking while Black at Wells Fargo—relate to Edmond's employment or oppose any unlawful employment practice. Thus, Edmond fails to establish that he engaged in a protected activity by making these comments.

Edmond's motion as to the latter's claim of discriminatory retaliation.

### 5. *Disparate Impact*

"To establish a prima facie case of disparate impact discrimination under Title VII, a plaintiff must 'show that [a] facially neutral employment practice had a significantly discriminatory impact.'"[11] *Anderson*, 406 F.3d at 265 (quoting *Walls v. City of Petersburg*, 895 F.2d 188, 191 (4th Cir. 1990)). Edmond does not point to a single "facially neutral employment practice" that he deems discriminatory. Although he complains of Wells Fargo's "ongoing discriminatory hiring and promotion practices," Edmond offers no evidence in support of these allegations. (ECF No. 23 ¶ 17.) Edmond claims to "support" his disparate impact claim "with direct evidence," (ECF No. 49, at 26), but he offers only paragraph 13 from his affidavit in support. This paragraph reads: "Plaintiff's complaint provided a factual allegation against defendants. Plaintiff did quote the specific statements and facts upon which the claim is premised and attached copies of the relevant documents to the complaint." (ECF No. 10-1 ¶ 13.) The Court has reviewed the documents attached to Edmond's amended complaint, to his brief in opposition to Wells Fargo's motion, and to his briefs in support of his own motion for summary judgment. Nowhere does the Court find more than a "scintilla of evidence" that Wells Fargo's hiring and promotion practices have a discriminatory impact. *Anderson*, 477 U.S. at 252. As a result, the Court will grant Wells Fargo's motion as to Edmond's disparate impact claim.

*   *   *

If Edmond could make a prima facie case of discrimination in any of its forms, then the

---

[11] "[A] disparate impact claim is not viable under § 1981." *Taylor v. Millenium Corp.*, No. 1:15cv1046, 2016 WL 927185, at *8 (E.D. Va. Mar. 4, 2016); *see also Mozee v. Am. Com. Marine Serv. Co.*, 940 F.2d 1036, 1051 (7th Cir. 1991) ("[P]roof of disparate impact does not support section 1981 liability since intentional discrimination is required."). Accordingly, to the extent Edmond brings his disparate impact claim pursuant to § 1981, the claims fails.

burden would shift to Wells Fargo to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Sadeghi*, 251 F. Supp. 3d at 991 (quoting *Lettieri v. Equant Inc.*, 478 F.3d 640, 646 (4th Cir. 2007)). If Wells Fargo does that, then Edmond must "show that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Id.* (quoting *Lettieri*, 478 F.3d at 646).

Wells Fargo says it fired Edmond because he violated Wells Fargo policy by improperly handling his personal finances. In support of this, Wells Fargo offers evidence that three people—Long, Moliki, and Kinder—determined that Edmond had violated Wells Fargo policy with his CLE Deals account. Wells Fargo also offers evidence of its guidance to employees that failure to comply with its Conflicts of Interest and Outside Activity Policy "may result in a corrective action, including termination." (ECF No. 43-3, at 15–34.)

To reveal this proffered reason as pretext for discrimination, Edmond offers portions of Amanda Long's deposition. But the cited portions of Long's deposition reveal that Wells Fargo found Edmond violated its policy not because he did not identify *who* placed funds in his account, but because he failed to explain *where* the person got the funds that they placed in his account. (ECF No. 53-3, at 4:8–12.) The tax documents would not have provided Wells Fargo this information. (*Id.* at 5:6–9.) And although Long did not "formally request" documents from Edmond that "could have potentially cleared" him, this does not reveal Long's investigation as a sham or show that Wells Fargo planned to fire Edmond all along. (ECF No. 49, at 27.) According to Long, Edmond told her during the investigation that he did not know where the person who deposited the funds in his account had gotten the money. (ECF No. 53-3, at 4:2–5.) Edmond, himself, does not recall telling Long "that [he] documented the location where all funds originated from." (ECF No. 53-2, at 3:23–4:24.) And Edmond offers no such documentation

19

now.

Edmond, therefore, offers insufficient evidence that Wells Fargo's proffered reason for firing him "is actually pretext for discrimination." *Sadeghi*, 251 F. Supp. 3d at 991 (quoting *Lettieri*, 478 F.3d at 646). Thus, even if Edmond presented sufficient evidence to demonstrate a prima facie case of discrimination in any of the forms he alleges, his claims would still fail.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Wells Fargo's motion for summary judgment and deny Edmond's motion for summary judgment on all counts.

The Court will enter an appropriate Order.

Should Edmond wish to appeal this Opinion and Order, he must file a written notice of appeal with the Clerk of Court in the U.S. District Court for the Eastern District of Virginia within thirty (30) days of the date of entry hereof. Failure to file a notice of appeal within that period may result in the loss of the right to appeal.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 3 February 2022
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge